## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EBONEE CHONG,<br><br>    Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br><br>    Defendant. | Civil Action No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>NON-ARBITRATION |

### PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual, Ebonee Chong, against Defendant Lyft, Inc. ("Lyft") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. and Pennsylvania common law.

### JURISDICTION & VENUE

2. Jurisdiction of this Court over Plaintiff's federal law claim arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Jurisdiction of this Court over Plaintiff's state law claims arise under 28 U.S.C. § 1332(a).

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### THE PARTIES

5. Plaintiff Ebonee Chong is an adult individual residing in Philadelphia, PA, and is a citizen of Pennsylvania.

6. Defendant Lyft is a business entity that regularly conducts business in the Eastern District of Pennsylvania, and which has its headquarters and a principal place of business located at 185 Berry Street, Suite 5000, San Francisco, CA 94107. Lyft is a citizen of California.

## FACTUAL ALLEGATIONS

7. Ms. Chong started working as a driver with Lyft, Inc. (hereafter "Lyft") in May 2018.

8. Driving for Lyft was Ms. Chong's sole employment for nearly a year, and she relied on the income from Lyft to pay her bills and provide for her family.

9. On or around March 8, 2019, Ms. Chong received a citation in Delaware County for rolling a stop sign ("Citation").

10. Ms. Chong denied that she rolled the stop sign, maintained her innocence, and contested the Citation.

11. On April 4, 2019, the Magisterial District Court dismissed the Citation entirely.

12. On March 26, 2019, Lyft contracted with a third-party, Checkr, Inc. ("Checkr") to obtain a routine background check on Ms. Chong.

13. Checkr provided the background report on Ms. Chong to Lyft on or around March 27, 2019 ("First Report").

14. The First Report contained the pending citation that would ultimately be dismissed.

15. On or around March 27, 20219, Ms. Chong received notice that Checkr had reported that pending citation, and that she would shortly be suspended from her employment with Lyft.

16. On April 4, 2019, when the Magisterial District Court dismissed the Citation, it provided Ms. Chong with a copy of the court docket showing that the Citation had been dismissed.

17. On that same day, Ms. Chong disputed that accuracy of the First Report, disputed her impending suspension from Lyft, and provided a copy of the Magisterial District Court records to both Checkr and Lyft.

18. Lyft responded by informing Ms. Chong that she needed to dispute the contents of the First Report with Checkr.

19. Checkr responded by correcting the First Report and issuing another background report dated April 4, 2019 which correctly deleted any reference to the Citation (Second Report).

20. The Second Report was provided to and was accessible by Lyft.

21. Despite receipt of the Second Report, along with proof that the Citation had been dismissed and was no longer reporting on Ms. Chong's background reports, Lyft suspended Ms. Chong from employment with Lyft.

22. In response, over the subsequent weeks, Ms. Chong disputed her suspension multiple times with Lyft.

23. In response to each dispute, Lyft falsely stated that there was still an issue with Ms. Chong's background report.

24. In response to each dispute, Lyft directed Ms. Chong to dispute the contents of the background report with Checkr despite the fact that Checkr had already corrected the report.

25. In response to each dispute, Lyft refused to reinstate Ms. Chong to employment with Lyft.

26. Upon information and belief, Lyft made its decision to suspend Ms. Chong and its decision to not reinstate Ms. Chong on the contents of the First Report.

27. Despite making its decisions based on the First Report, Lyft provided Ms. Chong with a copy of the Second Report falsely representing that its decision making was based on the Second Report.

28. By providing a copy of the Second Report, but making its decisions on the First Report, Lyft failed to provide Ms. Chong with a "copy of the report" as that phrase is used in 15 U.S.C. § 1681b(b)(3)(A)(i).

29. By providing a copy of the Second Report, but making its decisions on the First Report, Lyft made it impossible for Ms. Chong to dispute or explain any inaccuracy in the background check.

30. Lyft has maintained its suspension of Ms. Chong up through the date of this filing.

31. In the alternative, if Lyft made its decision to terminate Ms. Chong based on the Second Report, Lyft violated Pennsylvania common law.

32. Lyft maintains certain standards with respect to an employee's driving record that must be kept in order for an employee to remain employed.

33. Lyft expects its employees to rely on those standards with respect their driving records.

34. It is reasonable for Lyft's employees to rely on those standards in expecting to remain employed by Lyft as a driver.

35. An employee who maintains a driving record that meets the expectations of Lyft's standards has no basis to be terminated from employment.

36. As a result of Lyft suspending Ms. Chong, Ms. Chong has lost the opportunity to drive for hundreds of third-party passengers.

37. As a result of Lyft suspending Ms. Chong, Ms. Chong has lost significant wages.

38. As a result of Lyft suspending Ms. Chong, Ms. Chong has experienced substantial financial hardship.

39. Additionally, Lyft partners with a third-party entity, Flexdrive Services, LLC "Flexdrive."

40. Through its partnership with Flexdrive, Lyft promotes the ability for individuals to become drivers with Lyft even if they do not own their own vehicle.

41. Lyft offers specific "plans" for drivers who rent or lease cars through Flexdrive, wherein the driver agrees to take passengers for a set number of rides in their Flexdrive vehicle in exchange for the driver having the right to use the Flexdrive vehicle for personal purposes outside of driving for Lyft.

42. Lyft promoted their partnership with Flexdrive to Ms. Chong.

43. Ms. Chong relied on the information provided to her by Lyft regarding Flexdrive and began leasing a car through Flexdrive in late-2018.

44. Ms. Chong used her Flexdrive vehicle to drive for Lyft and meet the standards set out in Lyft's Flexdrive "Plans."

45. As a result of meeting those standards, Ms. Chong was able to use the Flexdrive vehicle for personal purposes, including, but not limited to, driving her children to school, grocery shopping for her household, and taking care of her family.

46. When Lyft suspended Plaintiff as a result of the dismissed Citation, Ms. Chong automatically become ineligible to continue her lease with Flexdrive.

47. When Lyft refused to reinstate Ms. Chong even after Checkr corrected the report and deleted all reference to the Citation, Ms. Chong remained ineligible to lease a vehicle through Flexdrive.

48. As a result of suddenly having no access to a vehicle, Ms. Chong suffered significant additional damage in the form of financial damages, emotional distress including embarrassment, stress, and anxiety.

49. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

50. At all times pertinent hereto, the conduct of the Defendant as well as that of its agents, servants and/or employees, was willful, reckless, negligent, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## COUNT ONE

## FCRA 15 U.S.C. § 1681b(b)(3)

51. Plaintiff incorporates the foregoing paragraph as though the same were set forth at length herein.

52. Defendant Lyft is a "person" as that term is defined by § 1681a(b) of the FCRA.

53. Plaintiff is a "consumer" as that term is defined by § 1681a(c) of the FCRA.

54. The above-mentioned First Report and Second Report are "consumer report[s]" as that term is defined by § 1681a(d) of the FCRA.

55. Pursuant to its usual policies and practices Defendant failed to provide Plaintiff with a copy of the report that it was actually using to take adverse action against Plaintiff.

56. By failing to provide Plaintiff with the report that it was actually using when it took the adverse action against Plaintiff, Defendant disregarded the plain language of the FCRA § 1681b(b)(3)(A).

57. Defendant used a consumer report for employment purposes and took adverse action against Plaintiff based in whole or in part on the consumer report.

58. Defendant negligently and willfully failed to comply with the requirements of FCRA § 1681b(b)(3)(A) by failing to provide Plaintiff with adequate pre-adverse action notice before taking adverse action against him, as well as a copy of the *actual* report and statement of Plaintiff's rights under the FCRA.

59. Pursuant to 15 U.S.C. § 1681n and 1681o, Defendant is liable to Plaintiff for willfully and negligently violating FCRA § 1681b(b)(3.

## COUNT TWO

### Promissory Estoppel

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. Defendant had standards and representations regarding driving records of its employees.

62. Defendant expected its employees to rely on those standards and representation regarding driving records.

63. Defendant's employees did in fact rely on those standards and representations regarding driver records to determine whether they were subject to suspension or termination.

64. Based on Defendant's standards and representations regarding driving records, Defendant's employees knew whether they would be suspended or terminated based on the contents of their driving records.

65. Based on Defendant's standards and representations regarding driving records, Defendant's employees knew when they would not be suspended or terminated based on the contents of their driving records.

66. It was reasonable for Defendant's employees to expect to maintain employment and eligibility for employment based on their driving record as along as they maintained a driving record consistent with Defendant's standards and representations regarding driving records.

67. Plaintiff relied on Defendant's standards and representations regarding driving records.

68. Plaintiff maintained a driving record consistent with Defendant's eligibility requirements set out in its standards and representation regarding driving records.

69. As a result of Plaintiff maintaining a driving record consistent with Defendant's standards and representations for driving records, Plaintiff expected to maintain her employment with Defendant.

70. It was reasonable for Plaintiff to rely on Defendant's standards and representations regarding driving records.

71. As a result of Plaintiff's reliance on Defendant's standards and representations regarding driving records, and Defendant's failure to follow its own standards and representation, Plaintiff has suffered significant harm as set forth in detail above.

72. Defendant is liable to Plaintiff for damages caused by its failure to comply with its own standards and representations regarding driving records which resulted in Plaintiff's termination.

## COUNT FOUR

### Negligence

73. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74. Defendant is liable to Plaintiff for damages caused by its breach of its duty to provide truthful and honest information to Plaintiff about her employment with it.

75. Defendant owed Plaintiff a duty to communicate honestly and truthfully with respect to her job with it.

76. Defendant breached its duty to Plaintiff by failing to provide her with meaningful notice of its intention to take adverse employment action based in whole or in part on a consumer report and by failing to comply with its own standards and representations regarding driving records.

77. Defendant breached its duty to Plaintiff by failing to provide her with a meaningful opportunity to dispute or discuss with it any allegedly inaccurate information contained in the report that was actually used by Defendant in taking adverse action against Plaintiff.

78. As a direct and proximate result of Defendant's breach of its duty to Plaintiff, Plaintiff suffered the damages alleged above.

## COUNT FIVE

### Tortious Interference with Economic Gain

79. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

80. Employee drivers with Defendant are provided access to an "app" that allows prospective passengers to engage drivers.

81. The prospective passenger requests a driver through the app, and the employee driver is given notice of the passenger's request along with an indication as to the expected revenue of driving that passenger to their destination.

82. The employee driver is then given the opportunity to accept or not accept the passenger's request.

83. When Defendant terminated Plaintiff's employment, it suspended her use of the "app."

84. As a result, since the suspension in April 2019, Plaintiff has lost out on hundreds of prospective passenger requests for rides.

85. Plaintiff has lost out on the income from those rides.

86. From April 2019 through to the present, there existed hundreds of economically advantageous relationships between Plaintiff and the third-party passengers.

87. Defendant intentionally interfered with those relationships by suspending Plaintiff from use of the app.

88. The action was specifically taken by Defendant to prevent Plaintiff from accepting any additional passenger requests.

89. Defendant had no basis to suspend Plaintiff from use of the app and did so only as a result of either an inaccurate outdated report, or as a result of failing to follow its own standards and representations regarding driving records.

90. As detailed above, Defendant had no privilege or justification for interfering with Plaintiff's ability to accept passenger requests.

91. As a result of Defendant's intentional interference, Plaintiff lost out on significant income from April 2019 up through the date of this filing.

## JURY TRIAL DEMAND

92. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

(a) Actual damages;

(b) Statutory damages;

(c) Punitive damages;

(d) Costs and reasonable attorney's fees; and

(e) Such other and further relief as may be necessary, just, and proper.

Respectfully Submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.**

BY:  */s/ Mark Mailman*
MARK MAILMAN, ESQUIRE
JOSEPH L. GENTILCORE, ESQUIRE
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600

Dated: June 18, 2020          ***Attorneys for Plaintiff***